Morning guys. First case 12-545 in matter of the Estate of Stafford. Counselor Jeff. Morning. My name is George Riplinger. I represent the Objection to the case of Stafford. In this case, my client, Stafford, and his sister, Charles Stafford Morning, brother and sister. My mother died, and as sometimes happens, things get a little contentious. And as the facts in the case show, Charlotte had transferred approximately a million dollars out of mom's brokerage account before mom died using a statutory power of attorney. First counsel in the case filed a will contest. Under the will, my client, Stafford, was supposed to receive 25% of the estate. Of course, by the time mom died, there wasn't much left of the estate, and that's where the fight began. I got into the case and decided directly that a will contest was not appropriate. So we amended the complaint, brought in Mr. Martin, who was Charlotte's husband, and their two sons and the decedent's sister. We changed the cause of action dramatically. We alleged fraud, and we alleged replubbing, and we alleged conversion. The conversion fraud counts were against both Mr. and Mrs. Martin, the sister and her husband. The replubbing actions were filed against the two sons and the sister to recover amounts they had been gifted by Charlotte during mom's lifetime. Now, we do not object. This is all about who pays the attorney's fees for the litigation. We do not object at all to the estate paying for the attorney's fees incurred while this was a will contest, because I think under the law, that's perfectly fine. We do not object to the estate paying the attorney's fees for anything that was necessary to move the estate forward, at least up until this proceeding. What we do object to is attorney's fees being paid for the defense of Charlotte Martin and Robert Martin, their two children, after we dismissed the executor from the case and became a personal action strictly against his sister and her husband and the children. I don't believe that there's any case law in the case where it's very clear that if it is a personal action against the executor, as opposed to an action against the executor in his official capacity as executor, there's no authority for paying those attorney's fees. Well, in this case, the trial court did, I mean, the hearing that was conducted, there was no evidence. My understanding is there was no itemized attorney's fee bill submitted into evidence. However, both of the attorneys had an itemized bill at the hearing. I think it was represented to the court that about half of the fees would have been incurred after the administrator was dismissed out of the case or the cause of action was changed. But the trial court heard the arguments on all this and made a finding, and the finding was that these attorney's fees did benefit the estate. I think primarily because the estate was also released at the time of the settlement of the litigation. So why couldn't the trial court make that finding and allow those attorney's fees? The fact that the estate was released is a giveaway. The estate was not in any way, shape, or form at risk. There was no cause pending against the estate. Nobody was trying to get any estate money. The case paid out was paid personally by Charlotte Morton and Robert Morton. There's no claim pending against the estate and, in my opinion, no possible claim to be made against the estate because it was clear who got what and there was no argument about it. The only person in the finding, I think, is clearly erroneous because there's no way that this could be a benefit to the estate. There's no claim pending. Didn't the settlement protect the estate from future attack? You could protect the estate from future attack, but there was none planned, there was none pending, and none threatening. Even if the estate, in fact, even with the will contest, there was no particular challenge against the estate, although the bet would be that it would prove expensive. There's just no way that by adding a gratuitous release when there was no pending claim or no threatening claim could be of any benefit to the estate. This is an abuse of discretion standard, standard of review. Abuse of discretion or thoroughly erroneous. Tell me what the difference is between those two. Well, that's the difference between 2% and the full amount, I guess. It doesn't flatten out no matter what you look at. Well, I mean, you state in your brief it is within the trial court's discretion on awarding these fees, and I think it probably is an abuse of discretion standard, and that's what you state in your brief, and even in your brief you describe that as that finding would not be disturbed absent manifest or palpable error. Sometimes it's described as the ruling has to be fanciful and no rational trier of fact would have made that decision. I mean, it's a pretty tough standard, abuse of discretion. It's a tough standard, no question about it. And, you know, if no finding had been made, that's one thing, but the trial court here did make a finding, and the finding was this benefited the estate. So what do we do with that? With no factual basis to support it, it was a conclusory statement. I don't know how the court came to that conclusion. Nobody knows how the court came to that conclusion. In fact, I don't know how the court could come to that conclusion without an examination of an itemized statement. Okay, let me ask you a question about that, then. You had the itemized statement. I did. Why didn't you put it into evidence? Because we agreed that the question was whether or not it could be. If that was the agreement, then what difference does it make if the court didn't have an itemized statement? Well, I think any court who approves a $52,000 fee should have an itemized statement to see what's being billed. I agree with that. And I think that the parties agreed that probably one-half of that went there, so I think we had a pretty good idea of what it amounted to without going and spending a whole day with the court trying to go through every 15-minute entry. Obviously, if the court decided we would have to do that, if this court reverses, we would have to do that if the court held that it shouldn't have paid for that part of the case. I mean, I agree appropriate procedure would be for an itemized attorney's fee bill to be in, especially if there's any contest. However, in this case, the parties, I mean, didn't you waive that, really, by appearing before the court and saying, you know, I'm not objecting to hourly rate or anything like that. The only issue is whether this was a cause of action only against the individuals, and we agreed that half of it was to that approximately. You see what I'm saying? Well, I don't know that we waived that particularly. We came to an agreement that we would come back to that issue if the court decided they shouldn't pay, that the state shouldn't pay for it rather than doing it on that date. It was difficult for me to do it on that date since it came into effect at 5 o'clock the night before. Right. Did you move for a continuous? I could have, but we decided to proceed because the issue wasn't so much the dollar consensus as it was, does this get paid for this kind of a defense out of the estate, or do the mortgages have to pay for it out of their pocket? And that was the major issue. We had a reasonable idea of how much it was, and we figured we'd come back if the court decided that we'd come back, and then we'd go over the bill and decide what got paid. Part of the problem, of course, is that part of the settlement that we have, which the defense conveniently forgets to talk about, is that we were supposed to get additional money depending upon what the expenses of the estate were, and when you dump another $25,000 of expenses, approximately, we created this approximately half, into the equation. That's just another attempt, in my opinion, by the sister to cut her brother out of additional funds, and not only that, paying with him being at $25,000 like a baby, and, again, we have the challenge of who got what out of the estate. He paid 25% of his sister's fees for the battle that they'd been into, and, to me, that just doesn't ring right. It doesn't fare, and it shouldn't be countenance, and there are no cases that I've been able to find, and certainly none that the defense has been able to find, that say that the estate can pay for the defense of a claim made against an individual in an individual capacity. Not a single case in the history of the state of Illinois. There are plenty of cases, though, that say that the estate cannot pay, or there's one we cited directly that says, if the suit is against the individual who is the executive, and is against him solely in his personal capacity, the estate has no authority to pay those attorneys' fees, and I think it's that clear, and when a judge orders those personal attorney's fees paid, I think that's an abuse of discretion because there's no authority. It's just that clear. You cited Weber's estate, and your opponent says that that's not analogous. What's your response to that? He's wrong. I think it clearly is. It's not analogous 100 percent on the facts. No case ever is, with rare exception, but the principle is the same.  and you simply cannot pay someone's personal attorney's fees for a case filed against them personally in their individual capacity from the estate. The law is very clear on that. Good morning. May it please the Court of Counsel. It's our position, quite simply, that the biggest dispute in this case is not necessarily the amount of fees. It's all whether or not, after that certain date, what was done by our firm for the benefit of the estate. I think it's clear that the judge had the form of evidence, and he also had the background on this case. He knew what had gone on. He was familiar with both the L case and the probate case. We have, in the record, a release was obtained, which clearly not only releases the estate and the executor, but also indemnifies the estate and the executor. I think it was clearly within the Court's discretion to find that these services benefited the estate. In terms of the Weber v. Riley case, I think the distinction between the two is that that case would be applicable were we here today fighting about attorney's fees for this appeal. Because in that case, the underlying matters had been taken care of. It was Professor Riley's fees for representing him in the appellate procedure that were in question. Would you agree with the general proposition, as stated by Mr. Riplinger, that ordinarily fees to represent an executor or administrator in his individual capacity would not come out of the estate? I think it would depend as to whether there's also a companion benefit to the estate. If it solely is individual capacity, then yes. That's what we struggle with in this case. But, I mean, you know, there's no doubt that the estate would have no interest in paying the executor's individual attorney's fees generally. There would have to be something else. Correct. Well, there's no benefit at all to the estate. But I believe that's a different situation than what we have here. And what was the basis for the trial court's finding that it benefited the estate? Well, not only the release of the estate, because the situation that we were in, depositions were ongoing, there was certainly nothing to prevent the appellant. And one of those doctors that was supposed indicated, you know, she lacked testamentary capacity, whatever, to bring the estate right back into the action. Could that have been done? I mean, you know, the estate was originally sued in a will contest. Of course, a will contest has to be filed within six months and so forth. Then a new cause of action comes along, you litigate for two years. Could it have been reconverted into a will contest at a later date? I think it could have. Okay, just amend again. But I believe that to be true. But again, clearly from the release of the indemnity agreement, certainly there was a benefit to the estate. Was the release admitted into evidence at the hearing? I believe it was, but I wasn't there. Was it submitted to the judge? I mean, the representations were made by counsel mainly, I think, and I think everybody kind of agreed, yeah, these are the facts. Yeah, I mean, I know that it's clearly in the record at this point, but quite simply, that's our position. Thank you. Mr. Ricklin, let me ask you the same question real quick. I mean, basically what happened here was both attorneys went in and said, Judge, here's the situation. There's no dispute about what the facts are. The estate was released. This is how much the attorney's fees are. About half of them were attributed to litigation after the estate was out of the case. Pure legal issue, you decide. Isn't that pretty much what happened? Yes, sir. And we said, you know, if you decide that it shouldn't have been paid, we'll come in and we'll tear it apart and see what applies and what doesn't. And we thought that would save everybody a considerable amount of time. And that's how we submitted it to the court. As far as the release goes, you talked about a release indemnity. I don't recall there being any indemnity clause of any kind in there regarding the estate. It was a simple release of the estate from a nonexistent claim. Thank you, fellas.